FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

97 SEP 29   AM II: 13

U.S. DISTRICT COURT
N.D. OF ALABAMA

KAREN POWELL,        }
                    }
     Plaintiff,    }
                    }
v.                  }     **CASE NO. CV-95-B-2771-S**
                    }
SOUTHERN RESEARCH    }
INSTITUTE,          }
AND JOHN FIRNENO,   }
                    }
     Defendants.  }

ENTERED

SEP 2 9 1997

## MEMORANDUM OPINION

Currently before the court is the motion of defendants Southern Research Institute

("SRI") and John Firneno ("Firneno") for summary judgment. Plaintiff Karen Powell

("Powell") was employed by SRI from 1991 to 1994. Firneno managed the Toxicology

Services Group in which Powell worked during the relevant period of time. Powell alleges

violations of her rights under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42

U.S.C. § 1981 ("Section 1981" or "§ 1981"). Powell also alleges state law claims of assault

and battery and invasion of privacy. Upon consideration of the record, the submissions of the

parties, the argument of counsel, and the relevant law, the court is of the opinion that the

defendants' motion for summary judgment is due to be granted.

## I. FACTUAL SUMMARY

Defendant SRI hired plaintiff Powell, an African American female, on March 18, 1991,

as a Toxicology Technician Trainee. Kerr Aff. ¶ 6, Attach. A; Powell Dep. 62-63. On January 1,

1992, Powell was promoted to Toxicology Technician I, the position she held until she was laid

off on December 2, 1994. Kerr Aff. ¶¶ 6, 12, Attachs. A, H; Powell Dep. 70-71. Powell's duties included dosing laboratory animals, cleaning the laboratory, caring for the laboratory animals, and maintaining daily laboratory records. Powell Dep. 68-69. In addition, Powell received "certifications" to perform additional laboratory procedures as she became qualified to do so. Powell Dep. 69-70. At the time she was laid off, Powell had received 33 certifications. Firneno Aff. ¶ 5, Attach. C (Powell Certification Records).

On January 1, 1994, SRI appointed defendant Firneno, a white male, Manager of Toxicology Services Group, thereby making him Powell's manager. Firneno Aff. ¶ 1; Firneno Dep. 51, 53. A level of supervisors worked under Firneno and had direct supervision of the technical staff. Firneno Dep. 56-57. Debbie Bailey ("Bailey") directly supervised Powell and reported to Firneno during the relevant period of time. Firneno Dep. 78. Firneno's supervisor, David Serota ("Serota"), a white male, was appointed Director of Toxicology Research Department in July 1993. Serota Aff. ¶ 1. Serota reported directly to David Prejean ("Prejean"), a white male, who was vice-president of Life Sciences Division. Prejean Aff. ¶¶ 1, 2. James G. Kerr ("Kerr") was Manager of Human Resources during the relevant period of time. Kerr. Aff. ¶ 1.

Powell alleges the following about Firneno's conduct during the period of time between March 1994 and Powell's termination of employment in December 1994:

1.  Firneno asked one of Powell's co-workers if Powell was going to marry Frank Thigpen, another SRI employee. Powell confronted Firneno about asking other people about her personal life and told him to direct such inquiries, if he had any, to her. Powell Dep. at 102-08.

2.  On different occasions, Firneno asked Powell if her boyfriend stayed over on weekends. Powell answered these questions and did not object. *Id.* at 113-14.

2

3.   After Powell had returned from sick leave, Firneno called Powell into his office and told her that he thought she might have had an abortion.  Powell was angered by this question and responded that she had not had an abortion.  *Id.* at 115-21.

4.   Firneno asked Powell if she had ever dated anyone outside her racial group. Powell answered this question and did not object.  *Id.* at 121-26.

5.   On two or three occasions, Firneno touched Powell's hair and asked whether it was her real hair or if it was a "weave."  Powell felt that Firneno's actions had sexual implications.  *Id.* at 126-28, 131-38.

6.   On two occasions, Firneno tied Powell's laboratory apron, a plastic apron that tied in the back.  Powell had never seen Firneno tie anyone else's apron.  *Id.* at 128-31, 138-39.

7.   Firneno touched Powell's waist for ten seconds while helping her climb up a rack of animal cages.  Powell did not find this touching offensive.  *Id.* at 131, 142-45.

8.   Firneno asked a male SRI employee if Powell knew how to perform the "Tootsie Roll," a dance that Powell described as "very sexual."  Powell was not present and claims to have been offended when she heard about this incident.  *Id.* at 145-50.

9.   Firneno asked Powell whether she and her boyfriend watched pornographic movies together.  Powell answered this question and did not object.  *Id.* 150-53.

10.  Firneno asked Powell about Firneno getting a "fade" hair cut at a barber shop in a "predominantly black area."  Powell told him not to go to that part of town and did not object to his comments.  She testified she did not find these comments derogatory of Black culture.  *Id.* at 154-58, 168-69.

11.  On several occasions, Firneno opened the laboratory door and looked for Powell, looked through the laboratory window for Powell, or asked about Powell's whereabouts.  Powell heard about these incidents from co-workers and never witnessed the actions herself.  *Id.* at 176.

Other than the first incident involving Thigpen, Powell admits that she never confronted

Firneno.  She never told him to stop nor expressed her displeasure to him about any other aspect

of his behavior.  *Id.* at 114, 117, 122.  She states that her primary reason for confronting Firneno

about the Thigpen incident was to prevent the spread of rumors.  *Id.* at 108.  Powell did not

3

interpret Firneno's questions about her boyfriend staying over on weekends as an inquiry about her sexual behavior. Powell Dep. 159-60. Powell admits that Firneno never sexually propositioned her and that he never commented on his own sexual behavior. *Id.* at 161. Powell does assert that, in October or November 1994, two of her co-workers were discussing discrimination when Firneno made a comment to the effect that at least they weren't talking about sexual discrimination or sexual harassment. Powell was not present. *Id.* at 201-03.

Powell claims that Firneno's conduct made her more "nervous" in September 1994 and she began avoiding contact with him in October 1994. *Id.* 173-74. In October of 1994, she allegedly asked Bailey if she knew why Firneno was calling, looking for, and watching Powell. *Id.* at 140. She does not claim to report another complaint about Firneno's conduct until November 1994. *Id.* at 109, 119, 124, 136-37, 175, 187-88, 203-04.

Defendants maintain that in the fall of 1994 SRI was experiencing a decrease in revenue. Firneno Dep. 92; Kerr Aff. ¶ 7, Attach. C. In November 1994, Prejean directed Serota to reduce his department's monthly salaries by $15,000. Prejean Aff. ¶ 8. To meet Prejean's requirements, Serota met with Firneno to select candidates for lay offs. Firneno Dep. at 91; Serota Aff. ¶ 9. Serota determined that either David McDonough ("McDonough"), a white male technician, or Powell should be laid off from among the toxicology technicians. Firneno Dep. at 93. McDonough was on probation at SRI from May 25, 1994, until March 20, 1995, for attendance problems and for not fulfilling his leadership responsibilities as a senior research technician. Firneno Dep. 99-110, Exs. 2, 3, 6. Powell had been disciplined for improper documentation practices by Firneno. Kerr Aff. ¶ 12, Attach. I; Firneno Aff. ¶ 5. Upon comparing the two individuals, Serota suggested to Firneno that McDonough's experience and

4

reviews made him the better candidate to keep.  Firneno Dep. at 93; Serota Aff. ¶ 9.  Firneno

concurred based upon McDonough's past leadership experience and the fact that McDonough

had received more certifications than Powell.  Firneno Dep. at 91, 94, 143-44; Firneno Aff. ¶ 5,

Attachs. C, D (SRI Certification Records).

On November 16, 1994, Serota wrote a memorandum to Prejean proposing the people in

his department who should be laid off, including Powell and Eddie Hildreth ("Hildreth").  Serota

Aff. ¶ 9, 11, Attach. A (Memorandum from Serota to Prejean).  Hildreth,  a white male with

(according to defendants) a disability,[1] was an equipment technician.  *Id.*; Kerr. Dep. at 138-139.

The memorandum expressed Serota's desire to "furlough" Hildreth with the "hope" of "bringing

back" Hildreth to SRI's employment.  Serota Aff. ¶ 9, 11, Attach. A.  The only comment next to

Powell's name was her position.  *Id.*

On November 18, 1994, two days after Serota proposed Powell for layoff, she

complained to Nathaniel Borden ("Borden"), guard captain in SRI's Physical Security, that

Firneno had been harassing her.[2]  Borden Aff. ¶¶ 1-2; Powell Dep. 184.  Borden suggested that

Powell file a written complaint.  Borden Aff. ¶ 3; Powell Dep. 98-99.  According to Powell,

Borden told her that once the complaint was in writing Borden would take care of matters, and

that Powell was an attractive woman who could expect to have harassment problems.  Powell

---

[1]    Defendants assert that Mr. Hildreth has some sort of disability.  The court makes no
finding as to whether or not Hildreth is in fact disabled.

[2]    SRI maintains that it had an anti-harassment policy in effect at all times of Powell's
employment.  This policy requires complainants to report harassment to either Human Resources
or SRI management.  Kerr Aff. ¶¶ 6, 8, Attachs. A, D.  Powell does not recall whether she was
ever informed about this policy.  Powell Dep. 77-81.  At the time she spoke to Borden, she
believed that SRI security was an appropriate place to report harassment.  Powell Dep. 80.

Dep. 98-99. Powell never made any subsequent complaints, either in writing or otherwise, to

SRI management or Human Resources until she filed her complaint with the Equal Opportunity

Employment Commission ("EEOC") after her termination. Powell Dep. at 136-37, 149. On

December 2, 1994, Powell was discharged from her employment with SRI. Kerr Aff. ¶ 12,

Attach. H.

Defendants maintain that SRI's financial situation had improved by February 1995. Kerr

Aff. ¶¶ 7, 14, Attach. C. On February 23, 1995, Firneno interviewed Austin Anderson, a white

male, for a toxicology technician position. Kerr Aff. ¶ 14, Attach. L. Anderson had no

experience working in a toxicology lab and had few certifications in laboratory procedures.

Firneno Dep. at 71-91. Firneno decided to hire Anderson for the position of Toxicology

Technician II[3] prior to March 8, 1995, and offered him the job on March 21, 1995. Firneno Aff.

¶ 8; Kerr Aff. ¶ 14, Attach. M (SRI Offer Letter to Anderson).

Defendants also claim an equipment technician position became available due to

increased funding. Kerr Dep. at 138-39. SRI maintains that, in an effort to accommodate

Hildreth's disability, Hildreth's parents were contacted when the opening became available.

Serota Aff. ¶ 9, Attach. B; Kerr Dep. at 138-39. Hildreth was rehired in April 1995. Firneno

Dep. 117-19.

---

[3]    A Toxicology Technician II position falls in a higher salary range than a Toxicology I
position. Kerr Dep. 164-65. According to the SRI documents, a Technician II position requires
three years of relevant experience or an associate's degree while the Technician I position
requires one year of experience and no degree. Pl.'s Evidentiary Submission Ex. 6 (SRI Job
Descriptions). At the time SRI hired him, Anderson had a college degree. Kerr Aff. ¶ 14,
Attach. K.

Powell filed a charge of employment discrimination with the EEOC on December 14, 1994. Kerr Aff. ¶ 6, Attach. B ( EEOC Complaint). Powell received her notice of right to sue from the EEOC on July 29, 1995, and filed her complaint with the court on October 26, 1995.

## II.  SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324.  The nonmoving party need not present

7

evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a properly made motion has been properly responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259; *see Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v.*

8

*Zimmerman.* 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III. TITLE VII CLAIMS

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). As an employer of fifteen or more employees, SRI constitutes an employer that is subject to liability under Title VII. 42 U.S.C. § 2000e(b). Powell claims that she was subjected to a discriminatory lay off, *quid pro quo* sexual harassment, hostile working environment sexual harassment, hostile working environment racial harassment, and retaliation for opposing defendants' unlawful employment practices, all in violation of Title VII. The defendants' motion for judgment as a matter of law as to these claims is due to be granted because Powell has failed to raise a genuine issue as to any material fact concerning her Title VII claims.

As an initial matter, the court notes that summary judgment is due to be granted as to plaintiff's Title VII claims against defendant Firneno. The Eleventh Circuit has reaffirmed its

9

decision in *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991), that "[i]ndividual capacity suits under Title VII are . . . inappropriate." *Cross v. Alabama*, 49 F.3d 1490, 1504 (11th Cir. 1995). Therefore, all Title VII claims against Firneno are due to be dismissed.

A.    Discriminatory Lay Off

Powell claims that her lay off was the result of unlawful discrimination. Pl.'s Compl. ¶ 24. Even if an employer has legitimate grounds for reducing its workforce, the employer may not take that opportunity to unlawfully discriminate. *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 81 (2d Cir.1983) (citing *Williams v. General Motors Corp.*, 656 F.2d 120, 129-30 (5th Cir. 1981), *cert. denied*, 455 U.S. 943 (1982)). Title VII explicitly prohibits employment practices motivated by, *inter alia*, an employee's race or sex even if other factors also motivated the practice. 42 U.S.C. 2000e-2(m).

To establish a prima facie case of discrimination, a plaintiff may employ direct, statistical or circumstantial evidence. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045, *cert. dismissed*, 493 U.S. 1063 (1990). A prima facie case simply requires evidence that is adequate to create an inference of illegal discrimination. *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977). Using circumstantial evidence,[4] Powell could establish a prima facie case by showing that: (1) she is a member of a protected class; (2) she was adversely affected by an employment decision; (3) she was qualified for her

---

[4]    Powell has presented neither statistical evidence nor direct evidence of discrimination. Thus, the court will examine the evidence under the allocation of burdens and order of presentation of proof for Title VII disparate treatment cases set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

current position or to assume another position at the time of discharge; and (4) a fact finder could reasonably conclude that the employer demonstrated an intent to discriminate in reaching that decision. *Jameson v. The Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir. 1996).

Applied to this case, Powell could meet her initial burden of establishing a prima facie case of discrimination. She easily satisfies the first three *Jameson* elements: (1) she was a member of two protected classes as an African American female; (2) she was adversely affected by her lay off; and (3) having served as a Toxicology Technician I for almost two years, she was most likely qualified for her position and similar positions within SRI. Powell could fulfill the fourth *Jameson* element by asserting that SRI retained a less or equally qualified person outside her protected classes. *See Hearn v. General Elec. Co.*, 927 F. Supp. 1486, 1494 (M.D. Ala. 1996). Defendants have admitted that their lay off decision came down to Powell and David McDonough, a white male. Thus, Powell has met her burden by having asserted that McDonough was less equally qualified. Kerr Aff. ¶ 6, Attach. B (Powell's EEOC charge); Powell Dep. 218-24.

Upon Powell's establishment of a prima facie case, defendant SRI must bear the burden of producing evidence of a legitimate, nondiscriminatory reason for Powell's termination. The court finds that defendant has satisfied this burden by providing evidence of the reason lay offs were necessary and why Powell was chosen. First, defendant produced evidence that the Toxicology Department had experienced a decline in revenue that necessitated a reduction in the department's workforce. Kerr Aff. ¶ 7, Attach. C; Serota Aff. ¶¶ 7-9; Prejean Aff. ¶¶ 7-9. Second, as part of the workforce reduction process, Serota and Firneno chose to retain McDonough over Powell. Firneno Aff. ¶ 5; Serota Aff. ¶ 9. Defendant claims that Serota

11

and Firneno chose McDonough, a white male, over Powell because McDonough was certified in more laboratory procedures and possessed leadership experience. *Id.* This rationale forms a legitimate, nondiscriminatory reason, thereby satisfying defendant's burden of production.

To ultimately prevail, Powell must prove that the proffered reason is merely a pretext for intentional discrimination. The Supreme Court instructs that "[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 519 (1993). The court's inquiry focuses on the veracity -- not wisdom -- of the defendants' proffered rationale. The Eleventh Circuit has noted:

> Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules. . . . Nor does the statute require the employer to have a good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, so long as its action is not for a discriminatory reason.

*Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984) (internal citations omitted).

In the present case, Powell has failed to assert facts that would rebut the defendant's proffered reasons for her lay off. First, she has failed to provide evidence that the defendant's explanation is false. She does not deny that SRI suffered from financial problems at the time she was laid off; she simply makes a bare allegation that her lay off was not the result of SRI's loss of revenue. Powell Dep. 199. She also admits that others were laid off at the same time. *Id.*

Powell does challenge defendant's reasons for choosing her for lay off rather than McDonough. However, she does not produce any evidence that rebuts the defendant's

12

position that McDonough was retained because he had more laboratory certifications and

leadership experience. She does not dispute the evidence that McDonough was a team leader.

Moreover, she erroneously denies that McDonough had more certifications. Powell Dep. 223.

SRI certification records indicate that Powell had less certifications than McDonough and

Powell does not challenge the accuracy of these records. Firneno Aff. ¶ 5, Attachs. C, D.

Instead, Powell claims that McDonough was less qualified than her because he was on

probation while she was not. Pl.'s Compl. ¶ 21. While McDonough's probationary status is

undisputed, a factfinder cannot substitute its own -- or an employee's -- judgment for an

employer's judgment about how heavily to weigh probationary status against skills and

experience when making personnel decisions. *See Nix*, 738 F.2d at 1187 (refusing to displace

an employer's decision that may seem "unfair" to outside observers). As stated above, the

present inquiry lies with the *veracity* of an employer's reasons and Powell has done nothing to

create a genuine dispute as to this issue.

    Most importantly, Powell has failed to allege sufficient facts to meet her ultimate

burden; a reasonable jury cannot conclude that either her race or sex was even a motivating

factor for her lay off. As listed in the Factual Summary above, Powell makes numerous

allegations in support of her claim that Firneno discriminated against her on the basis of her

race and sex.[5] However, both the quality and quantity of these actions do not reflect any

---

[5]    SRI's subsequent decisions to hire Anderson and rehire Hildreth do not offer any
additional support that the initial lay off decision was discriminatory. Anderson had not even
applied for a position with SRI when Powell was terminated and was not interviewed for a
position until late February 1995. Similarly, Hildreth was rehired several months after he and
Powell were both discharged. While personnel decisions following a discriminatory action
may provide evidence of discriminatory intent, the court does not find that such an inference

animus towards Powell on the basis of her race or sex. In addition, Powell blames Firneno completely for her lay off even though Serota, Firneno's superior, appears to have played a greater role in the decision. Powell Dep. 200; Firneno Dep. 92-94; Serota Aff. ¶ 9. Powell presents no evidence to dispute Serota's role and asserts no facts which raise any inference of discriminatory animus on Serota's part.

For the foregoing reasons, the court concludes that defendant's motion for summary judgment on Powell's discriminatory lay off claim is due to be granted.[6]

B.    Sexual Harassment

Two types of sexual harassment are recognized by the courts: *quid pro quo* and hostile working environment. *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir. 1989). When an employer alters an employee's job conditions *as a result of* the employee's refusal to submit to sexual demands, *quid pro quo* sexual harassment occurs. *Id.* Hostile environment sexual harassment occurs when an employer's conduct "'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment.'" *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65 (1986)

---

may be reasonably drawn here.

[6]    Powell filed a motion to amend her complaint to assert a claim that defendant discriminated against her on the basis of her gender and in retaliation for protected activity in violation of Title VII when it failed to rehire her. The motion to amend was denied and plaintiff filed a second lawsuit to assert these claims which has been consolidated with this case. The court's findings and conclusions in this Memorandum Opinion only pertain to the claims stated in CV 95-B-2771-S.

(citation omitted); *Steele*, 867 F.2d at 1315. Powell alleges that she was subjected to both *quid pro quo* and hostile working environment sexual harassment. Pl.'s Compl. ¶ 25.

### 1.     *Quid Pro Quo* Harassment

In order to establish a prima facie case of *quid pro quo* sexual harassment, a plaintiff must prove: (1) that the employee belongs to a protected group; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment complained of was based on sex; and (4) that the employee's reaction to the unwelcome behavior affected tangible aspects of the employee's compensation or terms, conditions, or privileges of employment. *Virgo v. Riviera Beach Assocs.*, 30 F.3d 1350, 1361 (11th Cir. 1994). In a *quid pro quo* case, the corporate defendant is strictly liable for the supervisor's harassment. *Steele*, 867 F.2d at 1316. A plaintiff need not prove knowledge on the part of the employer. *See Prescott v. Independent Life & Accident Ins. Co.*, 878 F. Supp. 1545, 1549 (M.D. Ala. 1995). However, the Eleventh Circuit emphasizes that "[t]he acceptance or rejection of the harassment by an employee must be an express or implied condition to the receipt of a job benefit or the cause of a tangible job detriment in order to create liability under this theory of sexual harassment." *Henson v. City of Dundee*, 682 F.2d 897, 909 (11th Cir. 1982).

Applying the prima face case requirements to Powell's claim for *quid pro quo* sexual harassment, the court finds that Powell has failed to produce sufficient evidence from which a reasonable jury could conclude that her reaction to Firneno's alleged sexual harassment "affected tangible aspects of the employee's compensation or terms, conditions, or privileges of employment." *Virgo*, 30 F.3d at 1361. First, there is no evidence that Firneno ever

15

expressly or impliedly conditioned an employment decision on Powell's acceptance of any sexual advances. Powell was never promised any type of job benefit or threatened with any type of job detriment in exchange for succumbing to sexual demands. Powell Dep. at 272-73. She has not asserted any implied promises or threats.

Powell simply makes the conclusory allegation that Firneno "liked" her and wanted something more than a manager-employee relationship. *See id.* at 126. She presents no evidence of sexual advances, let alone rejection of advancements. She admits that Firneno never propositioned her. She does not claim to have ever directly rebuffed Firneno; she only states that she avoided him. *Id.* at 174-75. While a plaintiff need not produce direct evidence of a link between an adverse employment action and the rejection of sexual advances, she must produce sufficient evidence from which it can be reasonably inferred that she rejected the alleged sexual advances and that her rejection was the "cause of a tangible job detriment." *See Henson*, 682 F.2d at 909. Given Powell's failure to provide any evidence that could reasonably support such an inference, the court concludes that defendant's motion for summary judgment on Powell's claim of *quid pro quo* sexual harassment is due to be granted.

### 2.   Hostile Work Environment Sexual Harassment

Hostile work environment sexual harassment occurs "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted); *Cross v. Alabama*, 49 F.3d 1490, 1507 (11th Cir. 1995). The conduct at issue must be severe or pervasive enough to create an "objectively hostile or abusive work environment"

16

to be actionable under Title VII. *Harris*, 510 U.S. at 21; *see also Henson*, 682 F.2d at 904 (sexual harassment must be "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment"). Thus, the "mere utterance" of a remark that engenders offense does not affect the terms, conditions, or privileges of employment to a sufficient degree to violate Title VII. *Henson*, 682 F.2d at 904. In addition, whether an environment is "hostile" or "abusive" must be determined by looking at the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating as opposed to merely offensive, and whether the conduct unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23; *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521-22 (11th Cir. 1995).

To establish a prima facie case of hostile working environment, a plaintiff must show: (1) that the employee belongs to a protected group; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment complained of was based on sex; and (4) that the harassment affected a condition of the complainant's employment. *Cross*, 49 F.3d at 1504. The plaintiff must also prove that the employer is liable for the conduct of its employee through *respondeat superior*. *Steele*, 867 F.2d at 1316. In other words, plaintiff must show that "the corporate defendant knew or should have known of the harassment and failed to take prompt remedial action against the supervisor." *Id.*

In the present case, the court concludes that Powell has failed to produce sufficient evidence of a hostile working environment actionable under Title VII. Both in its severity and frequency, Firneno's alleged conduct does not give rise to a reasonable inference that a hostile

17

working environment existed.  First, only his comments about an abortion and his inquiry about Powell and her boyfriend watching pornographic films could be categorized as sexual in nature.  Powell admits that Firneno never asked about any other aspects of her sexual behavior nor did he ever comment about his own sexual behavior. Powell Dep. 159-61.  His alleged question about the "Tootsie Roll" only happened once and was outside of her presence.  *Id.* at 148-49.  Powell admits that she did not find his other questions and comments to be of a sexual nature.  *Id.* at 159-60.  In addition, Firneno only touched Powell on a few occasions.  She considered few of these instances to have carried sexual overtones.  For example, Powell did not consider Firneno touching her back for ten seconds to be offensive.  *Id.* at 144.  Finally, the few, isolated incidents that she recounts occurred over a period of several months.

Firneno's behavior may have been discomforting, embarrassing, and even offensive to a reasonable person in Powell's position; however, they were not of such severity nor did they occur with enough frequency to render the workplace "hostile" or "abusive" within the definition given those terms by cases interpreting Title VII.  *See Harris*, 510 U.S. at 23.  The purpose of Title VII, as made clear by the Supreme Court in *Harris*, is not to address all behavior which an employee finds "disruptive" or even offensive.  Rather, its penalties are reserved only for those employers who create or permit an "objectively hostile or abusive work environment."  *Id.*  Powell has failed to produce sufficient evidence from which a reasonable jury could conclude that Firneno's behavior created an environment so "permeated with 'discriminatory intimidation, ridicule, and insult,' that [was] 'sufficiently severe or pervasive to alter the conditions of [Powell's] employment and create an abusive working environment.'"  *See id.* at 21; *Cross*, 49 F.3d at 1507.

Because Powell has failed to establish a prima facie case of hostile working environment sexual harassment, the court need not discuss the question of SRI's liability and concludes that defendant's motion for summary judgment as to Powell's hostile environment claim is due to be granted.[7]

C.     Hostile Work Environment Racial Harassment

Powell alleges that defendants subjected her to a hostile work environment on the basis of her race. Pl.'s Compl. ¶ 25.[8] The legal standard for proving such a claim is equivalent to the legal standard for proving a hostile work environment on the basis of sex. *Edwards v. Wallace Community College*, 49 F.3d 1517 (11th Cir. 1995). Applying this standard to the present case, the court finds that Powell has failed to provide sufficient evidence to support a claim of hostile work environment based on racial harassment.

As with the sexual harassment claim, the severity and frequency of Firneno's alleged actions do not give rise to a reasonable inference that a hostile work environment existed. Only his questions about Powell dating outside of her racial group and his remarks about wanting to get a "fade" haircut in a "predominantly black area" of town even refer to a subject

---

[7]     Even if plaintiff had established a prima facie case of hostile work environment sexual harassment, SRI would be entitled to judgment because there is no evidence on which a reasonable jury would conclude that SRI "knew or should have known of the harassment and failed to take prompt remedial action against the supervisor." *Steele*, 867 F.2d at 1316; *Farley v. American Cast Iron Pipe Co.,* 115 F.3d 1548, 1553-54 (11th Cir. 1997). *Farley* also held that an employee's failure to avail herself of her employer's grievance procedure precluded a finding that the employer had constructive knowledge of the supervisor's harassment of the employee.

[8]     During oral argument, plaintiff's counsel agreed that the facts in this case will not support a claim for hostile work environment based on racial harassment. Therefore, the court will only briefly discuss this claim.

19

involving race.  Although Powell found the questions about interracial dating to be harassing,

she only recounts one incident when Firneno asked these questions.   Powell admits that she

found Firneno's remarks about the fade haircut to be "funny" but not degrading of African

American culture.  Powell Dep. 154, 158.  Finally, Powell never heard Firneno or anyone

else use racial slurs at SRI.  *Id.* at 260.  Again, while Firneno's alleged behavior may be

offensive to a reasonable person in Powell's position, Powell has failed to produce sufficient

evidence from which a reasonable jury could conclude that Firneno's behavior created a

racially hostile work environment.  As with her hostile work environment sexual harassment

claim, Powell's inability to establish a prima facie case obviates the need for the court to

address the issue of SRI's liability.  Therefore, the court concludes that defendant's motion for

summary judgment as to Powell's hostile work environment racial harassment claim is due to

be granted.

       D.     Retaliation

      Powell alleges that she was laid off[9] in retaliation for opposing Firneno's allegedly

harassing behavior.  Pl.'s Compl. ¶ 29.  Title VII prohibits an employer from taking adverse

employment action against an employee in retaliation for her opposition to discriminatory

practices.  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of unlawful retaliation in

violation of Title VII, a plaintiff must show that: (1) the plaintiff engaged in statutorily

protected activity; (2) the employer was aware of that activity;  (3) the plaintiff suffered

adverse employment action; and (4) there was a causal connection between the protected

---

    [9]    She admits that, prior to her lay off, she did not suffer any loss of other employment
opportunities, training, or assignments.  Powell Dep. 266, 274.

activity and the adverse employment action. *Reynolds v. CSX Transp., Inc.*, 115 F.3d 860, 868 (11th Cir. 1997). Applying this standard to Powell's claim of retaliation, the court finds that Powell has failed to establish a prima facie case.[10]

Powell claims that her opposition to Firneno's conduct constituted protected activity; however, Powell alleges insufficient facts to create the inference that Firneno and Serota, the members of SRI management who recommended plaintiff's lay off, were aware of her complaints at the time they recommended her for termination. First, defendants have produced evidence that they made their decision to lay off Powell on or before November 16, 1997. Serota Aff. ¶ 9, Attach. A (Memorandum from Serota to Prejean dated Nov. 16, 1994). Powell does not dispute this date. Prior to November 16, 1994, Powell had only spoken to her family and Bailey about Firneno's conduct.[11] Powell has presented no evidence that her family members or Bailey told Firneno or Serota about any complaints. As stated above, her conversation with Bailey was too general to be reasonably construed as a complaint. At no point did Powell ever tell Bailey, Firneno, Serota, or anyone else in SRI management about her opposition to Firneno's conduct or her intent to file a complaint. Powell Dep. 204. Finally, Powell does not offer any evidence to account for Serota's role in

---

[10]   As stated in note 6, *supra*, the court's findings and conclusions in this Memorandum Opinion only pertain to the claims in CV 95-B-2771-S. The findings and conclusions herein should not be considered dispositive of the claims and issues presented in *Powell v. Southern Research Institute*, No. CV 97-B-0396-S (N.D. Ala. filed Feb. 18, 1997).

[11]   The evidence indicates that Powell did not speak with Borden about Firneno until November 18, 1994. Borden Aff. ¶ 2. Powell does not offer any evidence to rebut defendant's assertions that the lay off decision was made before her conversation with Borden.

21

her lay off. In fact, Powell actually holds Firneno completely responsible for her termination and alleges no wrongdoing on Serota's part. *Id.* 200.

Without sufficient evidence to establish awareness on the part of the decision makers of protected activity, Powell is unable to establish a causal connection between her opposition to Firneno's alleged conduct and her lay off. A defendant's awareness of a plaintiff's protected activity forms a minimum requirement for establishing a causal connection. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). The court concludes that Powell has not satisfied her burden of establishing a prima facie case and, therefore, defendant's motion for summary judgment on Powell's retaliation claim is due to be granted.

## IV. SECTION 1981 CLAIMS

Section 1981 prohibits race discrimination in the making and enforcement of contracts. 42 U.S.C. § 1981(a). Although Powell makes no distinction between her § 1981 claims and Title VII claims, only Powell's claims of racial discrimination are actionable under § 1981. *See Runyon v. McCrary*, 427 U.S. 160, 167 (1976); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459 (1975); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 436 (1968).

A plaintiff must prove intentional discrimination to prevail under § 1981. *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982); *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989). The Supreme Court has held that the standards for testing disparate treatment under Title VII fully apply to § 1981 claims. *Patterson*, 491 U.S. 186-188 (approving application of the *McDonnell Douglas/Burdine* approach to § 1981 cases); *accord Brown v. American Honda Motor Co.*, 939 F.2d 936, 949

22

(11th Cir. 1991).  *See also Reynolds v. CSX Transp., Inc.*, 115 F.3d 860, 866 (11th Cir. 1997) (equating § 1981 hostile environment standards with Title VII hostile environment standards).  The court's previous analyses of Powell's Title VII claims are dispositive of Powell's § 1981 claims of discriminatory discharge, racial harassment, and retaliation.[12] Therefore, the court concludes that defendant's motion for summary judgment with respect to Powell's § 1981 claims is due to be granted.

## V.  STATE LAW CLAIMS

At the outset of the discussion of plaintiff's state law claims, it should be noted that these two claims are without merit against the defendant SRI.  Under Alabama law, in order to hold an employer liable for an employee's tortious conduct, "the plaintiff must offer evidence that the agent's wrongful acts were in the line and scope of his employment . . .; or that the acts were in the furtherance of the business of [the employer] . . .; or that [the employer] . . . participated in, authorized, or ratified the wrongful acts."  *Joyner v. AAA Cooper Transp.*, 477 So. 2d at 364, 365 (Ala. 1985).  Plaintiff has failed to offer any such evidence in this case.

A.     Invasion of Privacy

The Alabama Supreme Court has recognized that "'*the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities'*" constitutes* a tortious invasion of privacy.

---

[12]    It is likely that § 1981 does not provide a cause of action for the type of retaliation alleged by plaintiff.  *See Little v. United Technologies,* 103 F.3d 956, 960-961 (11th Cir. 1997).  However, the court need not reach this issue in the present case because defendant SRI would prevail on its motion for summary judgment even if § 1981 does cover retaliatory acts of the type Powell alleges.

*Busby v. Truswal Sys. Corp.,* 551 So. 2d 322, 323 (Ala. 1989) (emphasis in original) (citations omitted). "One may invade another's privacy through either an intrusion upon a physical space, such as a trespass, or by an invasion of one's 'emotional sanctum.'" *Carter v. Innisfree Hotel, Inc.,* 661 So. 2d 1174, 1178 (Ala. 1995). In addition, "marriage," and "sexual" concerns have been recognized as fundamental rights, entitled to privacy protection. *Phillips v. Smalley Maintenance Serv., Inc.*, 435 So. 2d 705, 708 (Ala. 1983).

Plaintiff contends that Firneno's alleged conduct towards her constitutes a tortious invasion of her privacy. At least two Alabama cases have found that sexual harassment can give rise to a claim of invasion of privacy under state law. *See Busby*, 551 So. 2d at 322; *Phillips*, 435 So. 2d at 705. The conduct alleged in those cases, however, was much more egregious than the conduct alleged by plaintiff in this case. For example, in *Busby* the defendant supervisor made numerous sexually explicit comments to the plaintiffs, openly propositioning them and physically touching them. *Busby*, 551 So. 2d at 324. The court held that based on the evidence in that case a jury could reasonably determine that the supervisor "pried or intruded into the plaintiffs' sex lives in an offensive or objectionable manner and thereby invaded their right of privacy." *Id.* Similarly, in *Phillips*, the evidence showed that the defendant supervisor began harassing the plaintiff by asking explicit questions about her sex life. *Phillips*, 435 So. 2d at 707. Eventually, the supervisor in *Phillips* insisted that the plaintiff engage in oral sex with him at least three times a week and terminated her after she consistently refused. *Id.* As in *Busby*, the *Phillips* court held that the plaintiff had stated a cause of action for invasion of privacy. *Id.* at 711.

24

In this case, however, plaintiff has failed to allege facts from which a reasonable jury could conclude that her private activities were invaded "in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Busby*, 551 So. 2d at 323. Plaintiff makes no allegation that Firneno ever contacted her outside of work, nor does she contend that Firneno ever propositioned her. Moreover, she concedes that Firneno never asked her questions about her sexual preferences, practices or behavior. None of Firneno's conduct rises to the level of the conduct in *Busby* or *Phillips* found to be actionable. Therefore, although less egregious behavior than that alleged in *Busby* and *Phillips* may give rise to a cause of action for invasion of privacy, Firneno's alleged conduct does not give rise to such an action and defendant Firneno's motion for summary judgment as to plaintiff's common law claim for invasion of privacy is due to be granted.

B.    Battery

Under Alabama law, battery is the "touching of another person in a hostile manner." *Wright v. Wright*, 654 So. 2d 542, 544 (Ala. 1995). As the Alabama Supreme Court has stated, "'*[t]he wrong here consists, not in the touching, so much as in the manner or spirit in which it is done . . . Thus, to lay hands on another in a hostile manner is a battery, although no damage follows*; but to touch another, merely to attract attention, is no battery and not unlawful.'" *Surrency v. Harbison*, 489 So. 2d 1097, 1104 (Ala. 1986) (emphasis in original) (quoting *Singer Sewing Machine Co. v. Methvin*, 63 So. 997, 1000 (Ala. 1913)).

In this case, the physical touching alleged by the plaintiff involved Firneno's assistance in helping her off a ladder, tying her apron, and touching her hair. None of these actions could be concluded to be "hostile" by a reasonable jury. Therefore, defendant Firneno's

motion for summary judgment as to plaintiff's common law battery claim is due to be granted.[13]

## VI. CONCLUSION

Plaintiff's evidence raises no genuine issues of material fact regarding any of her claims and defendants are entitled to judgment as a matter of law.  An order in accordance with this opinion will be entered contemporaneously herewith.

**DONE** this ⟨29th⟩ of September, 1997.

**SHARON LOVELACE BLACKBURN**
United States District Judge

---

[13]  In her brief in opposition to defendants' Motion for Summary Judgment, plaintiff did not present any argument in opposition to defendants' Motion for Summary Judgment on plaintiff's assault and battery claims.

26